The Petitioner filed its presentment of attorney for misconduct and application for reciprocal discipline on January 9, 1992 pursuant to Practice Book Sections 28 and 31 predicated on the Respondent's December 6, 1991 felony conviction after trial in the United States District Court for the District of Connecticut of one Count of conspiracy and fifty nine counts of securities fraud. These proceedings were stayed by the court (Aronson, J.) on February 14, 1992 "pending exhaustion of all avenues of appeal." On March 22, CT Page 1666 1993 the United States Court of Appeals for the Second Circuit affirmed the conviction. On November 15, 1993 the United States Supreme Court denied the Respondent's application for writ of certiorari. All avenues of appeal having been exhausted, the stay was vacated, each party filed briefs on January 13, 1994, and on that date this court heard oral arguments from the parties, testimony of witnesses, including the Respondent, and many exhibits were admitted.
Upon conviction the Respondent was sentenced to three years probation with six months home confinement, ordered to pay $2767.20 costs of supervision, costs of monitoring service, a $5,000.00 fine and to perform 400 hours of community service. On December 13, 1991 the United States District Court (Cabranes, J.) suspended the Respondent from practice before that court until final disposition of any disciplinary proceedings commenced as a result of the conviction. This interim suspension remained in effect until January 25, 1994 when at a hearing Judge Cabranes ordered that the Respondent be suspended for ten months from that date. Respondent testified at the January 13, 1994 hearing before this court that the federal court suspension has little impact as he seldom, if ever, practices before that court. On January 24, 1994 the sentencing judge, Peter C. Dorsey, discharged the respondent from probation, prior to the three year period, which had been imposed. Since his conviction the Respondent has continued to practice law.
The witnesses who testified before this court on January 13, 1994, including the Respondent, were all straightforward, forthcoming, candid and favorably impressive. Except for the activities which led to his conviction, the court believes that the Respondent's life as an attorney, father, husband, businessman, community leader and citizen were commendable. Certainly to his credit are the facts that he volunteered his involvement to the FBI and then co-operated with that agency and the SEC during their investigations. This, and the sixty plus testimonial letters, submitted here and to the federal court, obviously also impressed favorably the sentencing judge who, as indicated by the Respondent's counsel, imposed an extremely lenient sentence.
The Respondent seems to have been pushed from his normal straight and narrow path by an investment frenzy. An enhancement euphoria overcame him to the extent that in 1986 CT Page 1667 he was trading in the financial markets on his own behalf and executing five to eight transactions per day, five days a week. As part of his investment strategy the Respondent engaged in an illegal activity which is commonly referred to as insider trading. Between the Summer of 1986 and the Spring of 1987 he obtained access to information to be published in Business Week magazine, prior to its publication, through an employee of the printer of the magazine. The information was obtained in violation of a confidentiality policy maintained by both the publisher and printer of Business Week. The Respondent made a series of Securities trades based on the information he thus obtained and in so doing he admits to realizing a $36,000.00 profit.
Some writers on the subject of lawyer discipline have recently suggested that a court should impose sanctions designed to deter others from transgression and to punish the wayward. This court agrees that deterrence is a proper goal but continues to believe that it is not the objective of the court in this proceeding to punish the respondent, but to preserve the courts "from the official administration of persons unfit to practice in them." Statewide Grievance Committee v. Rozbicki, 211 Conn. 232, 238.
Useful in the consideration of a proper remedy are the Standards for Imposing Lawyer Sanctions (hereinafter, "Standards") adopted by the American Bar Association in 1986 and amended in February, 1992. The Standards are published in the ABA/BNA Lawyers' Manual on Professional Conduct. Although the Standards have not been adopted in Connecticut, both sides in the present case used them extensively in their presentations. Within the framework of the Standards it is helpful to consider the following: (1) What ethical duty did the lawyer violate? (a duty to a client, the public, the legal system, or the profession?; (2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly or negligently?); (3) What was the actual or potential injury caused by the lawyer's misconduct?" (Was there a serious or potentially serious injury?); and (4) Are there aggravating or mitigating circumstances?
In the present case the Respondent violated his ethical duty to the public, the legal system and the profession. These duties were continually breached by continued and ongoing criminal activity committed over a period of many CT Page 1668 months.
The Respondent argues that he did not act intentionally or knowingly. He testified that he never practiced in the area of securities law. His attorney argues that the law concerning insider trading is generally arcane and that the particular interpretation of the law by the Second Circuit Court of Appeals in the Respondent's case, United States v. Libera, 989 F.2d 596, 601 (2d Cir. 1993) was misplaced. Be that as it may, the Respondent is educated, intelligent and sophisticated. He has been a member of the bar since 1974, was an active investor and associated with financial professionals. He had to know that trading on information purchased prior to publication from an employee of the printer of a national news magazine was unethical and wrong even if he thought it technically shrouded from criminality.
The court finds that Respondent's activity as an investor was not so significant that it created a serious or potentially serious injury.
Respondent argues that ten of the thirteen mitigating circumstances under the Standards (Section 9-32) apply here. The court finds that several of them do including: (1) absence of a prior disciplinary record; (2) timely good faith effort to rectify consequences of misconduct; (3) full and free disclosure to disciplinary board or co-operative attitude toward proceedings; (4) character or reputation; (5) imposition of other penalties or sanctions; and (6) remorse.
Several aggravating factors under the Standards also apply including: (1) dishonest or selfish motive; (2) a pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge wrongful nature of the conduct; and (5) illegal conduct.
The Respondent was convicted of criminal conspiracy and fifty nine counts of securities fraud. These crimes were committed for the purposes of wrongful gain and harmed honest traders who did not have the edge of insider information. Also harmed were the public, the legal system and the legal profession; all are diminished when an attorney violates his ethical duties.
Upon weighing all factors well presented by counsel for CT Page 1669 the Petitioner and the Respondent, the court necessarily concludes that a period of suspension is required to deter others and to protect the public, the profession and the administration of justice.
The Respondent is accordingly suspended from the practice of law for a period of two years commencing on April 18, 1994.
The court will appoint attorneys pursuant to Practice Book Section 46B.
Langenbach, J.